NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **DEENIE GLASS,** | : | |
| | : | **Civil Action No. 10-5259 (ES)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **OPINION** |
| | : | |
| **BMW OF NORTH AMERICA, LLC,** | : | |
| **et al.** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**SALAS, District Judge**

**I.      Introduction**

        Before the Court is Defendant BMW of North America, LLC's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant seeks dismissal of Plaintiff's Complaint for having failed to state a claim upon which relief may be granted or, in the alternative, to dismiss or stay the action pursuant to the primary jurisdiction of the National Highway Traffic Safety Administration.  The Court has considered the submissions in support of and in opposition to the present motion, and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons set forth below, the Court grants Defendant's motion to dismiss.[1]

---

[1] Having determined that dismissal is the appropriate form of relief, the Court does not address Defendant's request for a stay pursuant to the doctrine of primary jurisdiction.

## II.     Background

### A.     Plaintiff's Personal Experience with Her MINI Cooper

In September 2009, Plaintiff Deenie Glass ("Ms. Glass" or "Plaintiff") purchased a used 2005 MINI Cooper from The Car Factory in Van Nuys, California. (Compl. ¶ 9). Almost one year later, on August 9, 2010, Ms. Glass lent her MINI Cooper to a friend to drive to a convenience store. (*Id.* ¶ 35). At around 10:15 AM that morning, Ms. Glass received a call from her friend who stated that the vehicle had lost all steering control. (*Ibid.*). Plaintiff's friend returned the vehicle to Ms. Glass. (*Ibid.*). Ms. Glass opened the hood of her car and started the engine. (*Ibid.*). Ms. Glass smelled smoke and realized that a portion of the vehicle's engine was on fire. (*Ibid.*).

Shortly thereafter, Ms. Glass notified BMW of North America, LLC ("BMW NA" or "Defendant") of the events that occurred on August 9, 2010. BMW NA allegedly told Ms. Glass to replace the power steering pump. (*Id.* ¶ 36). Ms. Glass then had her MINI Cooper towed to her local mechanic for an inspection. (*Id.* ¶ 37). The mechanic determined that the power steering pump had melted, and that the melting electrical components likely started the fire in the engine. (*Ibid.*). Ms. Glass paid $1,000.00 to have her car repaired. (*Ibid.*). BMW NA refused to reimburse Ms. Glass for the costs related to the repair of her MINI Cooper. (*Id.* ¶ 36).

### B.     The Complaint

On October 12, 2010, Ms. Glass filed a proposed Class Action Complaint,[2] on behalf of herself and all others similarly situated, against BMW NA, who is responsible for the

---

[2] The Court notes that Plaintiff has not yet moved for class certification.

manufacture, importation, distribution, marketing, and sale of all 2002-2009 MINI Cooper vehicles in the United States.[3]

Ms. Glass claims that this action arises from a dangerously defective power steering system (the "defect") that BMW NA omitted from its advertising.  (*Id.* ¶ 1).  The defect apparently manifests without warning thereby rendering the vehicle "virtually uncontrollable." (*Id.* ¶ 2).  The defect also starts a potentially catastrophic fire in the engine compartment of the vehicle.  (*Ibid.*).  Plaintiff avers that among the 2002-2009 MINI Cooper vehicles, there are a total of "77 complaints of power steering loss, 36 of which are directly attributed to steering pump failure, [as well as] 18 complaints of engine fires, of which 8 . . . [are] attributed . . . to power steering failures."[4]  (*Id.* ¶ 22).

Despite the alleged defect, BMW NA markets and advertises its MINI Cooper vehicles as having impeccable reliability, durability, and safety.  (*Id.* ¶ 5).  For example, sometime in 2004, Defendants issued advertisements for the MINI Cooper that stated: "Rated 4 stars in recent crash tests.  MINI is ready to serve and protect."  (*Ibid.*).  In addition, a statement on BMW NA's website provides that MINI Cooper's power steering is "a powerful ally in the war against loss-of-control."[5]  (*Ibid.*).  Ms. Glass believes that Defendant's representations are false, misleading, and deceptive.  (*Id.* ¶ 6).

Moreover, Plaintiff asserts that Defendants "knew or should have known that the claims about the vehicles were false, deceptive, and misleading."  (*Id.* ¶ 14).  Specifically, in April

---

[3] BMW NA claims that it is the North American importer and distributor of MINI brand vehicles.  (*See* BMW NA's Brief in Support of Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay this Action ("Def. Moving Br.") at 1 n.1).

[4] Plaintiff includes, as part of her Complaint, a sampling of customer complaints relating to the alleged defect. Notably, missing from the sampling is a 2007 customer complaint.  (*See* Compl. ¶ 22).

[5] BMW NA contests Plaintiff's phrasing of this allegation.  Specifically, BMW NA asserts that while the phrase "[a] powerful ally in the war against loss-of-control" does appear on its website, "it appears in connection with the Dynamic Stability Control feature, which uses the brakes and engine to maintain control, *not* . . . the MINI Cooper's power steering as Plaintiff asserts."  (Def. Reply Br. at 8-9 n.4).

2007, the National Highway Traffic Safety Administration ("NHTSA") opened an investigation into 2002-2003 MINI Cooper vehicles in response to thirty-two complaints involving loss of power steering and fires in those particular models.  (*Id.* ¶ 19).  BMW NA allegedly wrote a letter to the NHTSA wherein BMW NA disclosed "considerable familiarity with the defect, an internal record of complaints, and knowledge that the defect's primary cause was an insufficient seal of the power steering pump ground cable."[6]  (*Ibid.*).  BMW NA further stated that an insufficient seal could allow water to enter into the power steering pump power cable, which could cause corrosion.  (*Ibid.*).  In turn, the "corrosion could lead to a high thermal load condition resulting in localized smoldering and a loss of power steering assist."  (*Ibid.*).  To that end, Plaintiff believes that BMW NA knew its advertisements were misleading.  (*Id.* ¶ 14).

The NHTSA closed the April 2007 investigation four months after it began citing inconclusive findings.  Then, on September 28, 2010, BMW NA opened a new investigation, this time involving 2004-2005 MINI Cooper vehicles, in response to fifty-four complaints of power steering and/or steering pump failure.  (*Id.* ¶ 21).  This investigation is on-going.

Based upon these facts, Ms. Glass raises five causes of action in her Complaint.  In Count One, Ms. Glass claims that Defendants violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-2, for failing to disclose material facts relating to MINI Cooper vehicles.  (*Id.* ¶ 53).  In Count Two, Plaintiff alleges Defendants violated the NJCFA, specifically N.J.S.A. § 56:8-2.2, for failing to disclose that MINI Cooper vehicles possess a dangerous safety defect in its power steering.  (*Id.* ¶ 61).  In Count Three, Plaintiff avers that Defendants breached the implied warranty of merchantability, N.J.S.A. § 12A:2-314, because her vehicle contained a defect that made driving dangerous; thus, her MINI Cooper was totally

---

[6] Despite relying on this document, Plaintiff does not attach a copy of BMW NA's letter to the NHTSA as an exhibit to either the Complaint or Brief in Opposition to Defendant's Motion to Dismiss.

unfit for its ordinary purpose.  (*Id.* ¶ 69).   In Count Four, Plaintiff alleges that Defendants have profited unjustly from selling allegedly defective vehicles at inflated prices.  (*Id.* ¶ 75).  Finally, in Count Five, Plaintiff alleges common law fraud based upon Defendant's concealment and non-disclosure of material information relating to the alleged defect.  (*Id.* ¶¶ 82, 83).

On February 14, 2011, BMW NA responded to the allegations contained in Plaintiff's Complaint by filing the instant Motion.  BMW NA seeks to dismiss Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Because the amount in controversy exceeds $5,000,000.00 and at least one of the Plaintiffs resides outside of New Jersey, this Court properly has jurisdiction over this dispute pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

The motion is now ripe for this Court's consideration.

## III.    Discussion

### A.    Legal Standard

Federal Rule of Civil procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleading standard announced by Rule 8 does not require detailed factual allegations; it does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citation omitted).   In addition, the plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft*, 129 S. Ct. at 1949

(citing *Twombly*, 550 U.S. at 570). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (internal citation omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [and] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 129 S. Ct. at 1949.

With this legal framework in mind, the Court next turns to Defendant's motion.

**B.     Analysis**[7]

**1.     Counts One and Two: New Jersey Consumer Fraud Act**

---

[7] As a preliminary matter, the Court notes that Plaintiff asserts that any applicable statutes of limitation have been tolled by Defendant's knowing and active concealment. Although this is referenced in Plaintiff's Complaint, neither party makes this a point of emphasis in their briefing. Therefore, the Court will not *sua sponte* determine in the abstract which claim or claims should have the benefit of the equitable tolling doctrine. In reaching this determination, the Court is guided by *Glauberzon v. Pella Corp.*, No. 10-5929, 2011 U.S. Dist. LEXIS 38138 (D.N.J. April 7, 2011). In *Glauberzon*, the court was presented with a similar issue, to which the court explained:

> [i]t is not entirely clear which claims are asserted as timely . . . and which claims are asserted as viable by virtue of the equitable tolling doctrine. Such pleading fails to comply with the requirements of Federal Rule of Civil Procedure 8(a)(2)[,] which requires only a short and plain statement of the claim showing the pleader is entitled to relief . . . . Without such information, Defendant is not in a position to properly assess the timeliness of Plaintiff's claims, and, as a result the Court is being asked to assess the sufficiency of a variety of claims . . . in the abstract. Based on other reasons, more fully set forth below, the Court has dismissed the majority of those claims asserted in Plaintiffs' Amended Complaint without prejudice. To the extent Plaintiffs choose to file a Second Amended Complaint, Plaintiffs are . . . directed to more clearly delineate the theory . . . underlying each particular claim asserted.

*Id.* at *9-10. This Court agrees with the approach taken by the court in *Glauberzon*, and although the Court dismisses the claims in Plaintiff's Complaint for other reasons, the Court directs Plaintiff to clearly delineate the theory underlying each of her asserted claims in the Amended Complaint.

Counts One and Two of Plaintiff's Complaint assert claims under the New Jersey Consumer Fraud Act ("NJCFA"), specifically N.J.S.A. § 56:8-2 (Count One) and 56:8-2.2 (Count Two).  Count Five of Plaintiff's Complaint asserts a claim for common law fraud.

To establish a *prima facie* case under the NJCFA, a plaintiff must allege: (1) unlawful conduct by the defendant; (2) an ascertainable loss by plaintiff; and (3) a causal connection between the defendant's unlawful practice and the plaintiff's ascertainable loss.  *Payan v. Greenpoint Mortg. Funding*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010) (citing *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009).

BMW NA seeks dismissal of Counts One and Two of Plaintiff's Complaint on the basis that they fail to meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b), which imposes a heightened pleading requirement concerning allegations of fraud, including NJCFA claims, over and above that required by Rule 8(a).  *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846, 2011 U.S. Dist. LEXIS 79504, at *29 (D.N.J. July 21, 2011) (internal citation omitted).

Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The intended purpose of the heightened pleading standard is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).   "To satisfy this heightened standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."   *Ibid.*  "Plaintiff must also allege who made the

misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (internal citation omitted); *Wiatt v. Winston & Strawn, LLP*, No. 10-6608, 2011 U.S. Dist. LEXIS 68827, at *53 (D.N.J. June 27, 2011) ("Plaintiff must also allege who made the purported misrepresentation and what specific misrepresentations were made.").

### a. Unlawful Conduct

Plaintiff's NJCFA claim must contain specific allegations of BMW NA's unlawful conduct, subject to the heightened pleading requirements of Rule 9(b).

The NJCFA defines unlawful conduct as:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . .

N.J.S.A. 56:8-2.  In other words, "unlawful practices fall into one of three general categories: affirmative acts, knowing omissions, and regulatory violations." *Frederico*, 507 F.3d at 202 (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994) ("Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations.").  The "prime ingredient" underlying all types of unlawful conduct[8] is "'[its] capacity to mislead.'" *Arcand v. Brother Int'l Corp.*, 637 F. Supp. 2d 282, 296 (D.N.J. Nov. 30, 2009) (quoting *Cox*, 138 N.J. at 17) ("The capacity to mislead is the prime ingredient of all types of consumer fraud.").  "Importantly, *the conduct*, whether it be an omission or active misrepresentation, *must be made in connection with the sale or advertisement* of a product or service." *Ibid.* (emphasis added) (internal citation and quotation omitted).

---

[8] The Court notes that unlawful practice and unlawful conduct are used interchangeably.

Aside from that common element, differences exist among allegations of affirmative acts and omissions.  *See Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 468 (App. Div. 2001) ("This statutory scheme distinguishes between wrongs committed by affirmative acts and wrongs committed by a failure to act").  First, allegations of an affirmative act, *i.e.*, a misrepresentation, do not require a showing of intent or even actual deceit or fraud.  *Cox*, 138 N.J. at 17-18; *Leon*, 340 N.J. Super. at 468.  "One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive."  *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 605 (1997).  "Nor must the representation be one of material fact . . . ."  *Arcand*, 673 F. Supp. 2d at 297 (quoting *Leon*, 340 N.J. Super. at 470).

An omission, on the other hand, "occurs where the defendant (1) knowingly concealed (2) a material fact (3) with the intention that the consumer rely upon the concealment."  *Ibid.* (internal citation omitted).  "When the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an element of the fraud."  *Cox*, 138 N.J. at 18; *Liberman v. Johnson & Johnson Consumer Cos.*, No. 10-6196, 2011 U.S. Dist. LEXIS 107596, at *16 (D.N.J. Sept. 21, 2011) ("Intent to defraud is not necessary to show unlawful conduct by an affirmative act of the defendant, but is an element of unlawful practice by knowing omission of the defendant") (internal citation omitted).  "Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase."  *Arcand*, 673 F. Supp. 2d at 297.  "Obviously, there can be no [unlawful conduct], or reliance for that matter, if the defendant was under no obligation to disclose the information in the first place."  *Ibid.*

As a threshold matter, the Court must determine whether the Defendant's alleged unlawful conduct qualifies as affirmative acts or knowing omissions. Defendant maintains that Plaintiff's fraud-based claims allege the knowing omission or concealment of facts. (Def. Reply Br. at 1). In contrast, Plaintiff argues that it alleges both affirmative acts and omissions. (Pl. Opp. Br. at 7). Because the parties dispute the character of Plaintiff's allegations, the Court must first determine what type of unlawful conduct is implicated by Plaintiff's allegations before turning to the question of whether the allegations are sufficient to state a claim of unlawful conduct under the NJCFA.

Plaintiff identifies BMW NA's unlawful acts as follows:

> 1) BMW NA knew the vehicles suffered from a power steering defect, and yet continued to sell it to consumers without disclosing it; 2) BMW NA affirmatively misrepresented the handling and safety of their vehicles in the MINI Cooper advertising; and 3) BMW NA engaged in an unconscionable commercial practices under the CFA.

(*Ibid.*). The Court finds that Plaintiff's Complaint asserts both affirmative acts and omissions. Specifically, Plaintiff's first allegation of unlawful conduct is an omission, and Plaintiff's second and third allegations of unlawful conduct are affirmative acts. The Court will first address BMW NA's alleged affirmative acts before turning to its purported omissions.

### i. Affirmative Acts

At the outset, the Court notes that Plaintiff failed to provide citation to the specific affirmative acts, as outlined above. Nevertheless, the Court can discern that the advertisement Plaintiff is referring to is in Paragraph 5,[9] and the allegation of unconscionable commercial practice is in Paragraphs 34 and 56 of Plaintiff's Complaint.

---

[9] Although it appears Plaintiff has only identified the "MINI Cooper advertising," the Court also considers the statement on BMW NA's website.

In response, BMW NA argues that Plaintiff has failed to meet the heightened pleading requirements imposed by Rule 9(b).  (Def. Moving Br. at 8-9; Def. Reply Br. at 2).  BMW NA further contends that the statements identified above are examples of non-actionable opinion, not attestations of fact.  (Def. Reply Br. at 8 n.4).

Plaintiff counters by arguing that it has sufficiently pled the who, what, when, where, and how of the events at issue.  (Pl. Opp. Br. at 6).  Specifically, "Plaintiff has identified the MINI Cooper models at issue, the circumstances and dates of Plaintiff's purchase of the vehicle, Plaintiff's experience with the defect, and detailed information regarding the defect along with BMW NA's knowledge of the defect and its attempted fix." (*Ibid.*).

The Court finds BMW NA's arguments persuasive, and for the following reasons, concludes that the alleged affirmative acts are not examples of unlawful conduct, and that Plaintiff has failed to provide BMW NA with notice of the precise fraudulent conduct with which it is charged.

First, the Court finds the examples of Defendant's alleged misrepresentations identified in Plaintiff's Complaint to be mere puffery, and thus not actionable.  "The NJCFA distinguishes between actionable misrepresentations of fact and puffery."  *In re Toshiba Am. HD DVD Mktg. and Sales Practice Litig.*, No. 08-939, 2009 U.S. Dist. LEXIS 82833, at *27 (D.N.J. Sept. 11, 2009) (citing *Rodio v. Smith*, 123 N.J. 345, 352 (1991) (the slogan "You're in good hands with Allstate" was "nothing more than mere puffery" and thus was not "a deception, false promise, misrepresentation, or any other unlawful practice within the ambit of the [NJCFA].").  "Advertising that amounts to mere puffery is not actionable because no reasonable consumer relies on puffery.  The distinguishing characteristics of puffery are vague, highly subjective claims, as opposed to specific, detailed factual assertions."  *Id.* at *31 (internal citation and

quotation omitted); *see also Hughes*, 2011 U.S. Dist. LEXIS 79504, at \*35, 36 (holding that Panasonic's statements about the Televisions "industry leading black levels and contrast ratios" as well its representations about the television technology's ability to render images "the way the director intended" and producing "breathtaking" and "vivid" colors are non-actionable puffery); *Slack v. Suburban Propane Ptnrs., L.P.*, No. 10-2548, 2010 U.S. Dist. LEXIS 98602, at \*13 (D.N.J. Sept. 21, 2010) (holding statement that "[w]hen you shop at Suburban Propane, you get . . . the best value!" was not a statement of fact, and instead was non-actionable puffery); *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 13-14 (App. Div. 2003) (finding that defendant's advertisements which employed phrases such as "you . . . can lead a normal nearly symptom-free life again" were "not statements of fact, but are merely expressions in the nature of puffery, and are . . . not actionable under the NJCFA); *but see Lieberson v. Johnson & Johnson Consumer Cos.*, No. 10-6196, 2011 U.S. Dist. LEXIS 107596, at \*24 (D.N.J. Sept. 21, 2011) (product labels touting that the products were "clinically proven to help babies sleep better" was not puffery).

In this case, the Court finds the alleged misrepresentations—"Rated 4 stars in recent crash tests. MINI is ready to serve and protect" and "A powerful ally in the war against loss-of-control" (Compl. ¶ 5)—to be examples of non-actionable puffery. These statements are vague, highly subjective expressions of opinion, not specific detailed factual assertions. *See Tatum v. Chrysler Group LLC*, No. 10-4269, 2011 U.S. Dist. LEXIS 32362, at \*14 (D.N.J. Mar. 28, 2011) ("Absent *specific claims as to the braking system*, Defendant's general advertising was puffery . . . .") (emphasis added). Indeed, such statements are routinely made by companies seeking to gain a competitive advantage in their respective industries, and are therefore not actionable. *In re Toshiba Am. HD DVD Mktg. and Sales Practice Litig.*, 2009 U.S. Dist. LEXIS 82833, at \*28

("Whether something is the "best" is highly subjective, is always a matter of opinion, and is the type of statement regularly made by companies in promoting their products."). Thus, Plaintiff has not alleged any affirmative acts that would qualify as unlawful conduct.

Second, assuming *arguendo* that these statements were not puffery, Plaintiff still failed to allege "the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." The intended purpose of the heightened pleading standard is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico*, 507 F.3d at 200.

To that end, Rule 9(b)'s particularity requirement warrants more than a vague and arbitrary reference to a 2004 article in an unspecified "national publication." For that same reason, Plaintiff cannot simply reference a statement on a website without providing the date when the statement was made or at what point—if ever—Plaintiff was exposed to that statement. *See, e.g.*, *Hughes*, 2011 U.S. Dist. LEXIS 79504, at *36-37 (holding that Plaintiff did "not allege the date, place, or time of this misrepresentation or otherwise inject . . . precision and 'some measure of substantiation' into plaintiffs' allegations of fraud" by merely alleging that defendant made a misrepresentation in its advertising); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526 (D.N.J. 2008) (dismissing misrepresentation based NJCFA claim because "[w]ith regard to the statements of Volkswagen's website and in the 2002 Passat owner's manual, the Dewey *Plaintiffs do not allege when the statements were made or at what point—if ever—each Plaintiff was exposed to one or more of the statements*) (emphasis added); *Torres-Hernandez v. CVT*

*Prepaid Solutions*, No. 08-1057, 2008 U.S. Dist. LEXIS 105413, at *18 (D.N.J. Dec. 17, 2008) ("a plaintiff cannot rely on legal conclusions that fail to allege when statements were made or when the plaintiffs were exposed to the statements").  The justification is logical, "[w]hile plaintiffs can not [sic] be expected to plead facts solely within [a defendant's] knowledge or control, plaintiffs should be able to allege the specific advertisements, marketing materials, warranties or product guides that they each reviewed, which included this misrepresentation and when it was advertised." *Hughes*, 2011 U.S. Dist. LEXIS 79504, at *37.  The Plaintiff here failed to allege the specific advertisement that she reviewed which included a misrepresentation. Further, Plaintiff has failed to specifically allege when the misrepresentation was advertised.

Finally, the Court turns to Plaintiff's allegations of unconscionable commercial practice. Specifically, Plaintiff alleges: "[i]n sum, BMW and its marketing practices are unconscionable" (Compl. ¶ 34); and "Defendants' advertising constitutes an unconscionable commercial practice . . . within the meaning of the CFA." (*Id.* ¶ 56).  The Court finds that these allegations are legal conclusions, which if buttressed in the Complaint by specific factual averments, might suffice to set forth a claim under the CFA.  However, the Complaint, as currently drafted, lacks sufficient detail to provide any level of precision to put BMW NA on notice of the basis for Plaintiff's claim of unconscionable commercial practice.  *See Frederico*, 507 F.3d at 200. Accordingly, the Plaintiff has not stated a claim of relief, based upon BMW NA's alleged unconscionable commercial practice, that is plausible on its face. *Iqbal*, 129 S. Ct. at 1949.  The Court will, however, afford Plaintiff the opportunity to file an Amended Complaint to cure these deficiencies.

- 14 -

**ii. Omissions**

BMW NA's alleged omissions are: (1) Defendants failed to tell consumers that the MINI Cooper has an inherent defect that compromises and diminishes the quality, safety, durability, craftsmanship, and performance of the MINI Cooper.  (Compl. ¶ 6); (2) Defendants intentionally failed to disclose its knowledge of the defect from Plaintiff (*id.* ¶ 30); (3) the advertising of Defendant's vehicles fails to disclose material facts (*id.* ¶ 53); (4) despite BMW NA's knowledge of the defect (*id.* ¶ 19-20), Defendant omitted material facts with the intent that others rely thereon.  (*Id.* ¶ 56).[10]

In seeking dismissal, BMW NA raises four arguments.  First, BMW NA asserts that Plaintiff fails to meet the heightened pleading requirements imposed by Rule 9(b).  (Def. Moving Br. at 8-10; Def. Reply Br. at 2).  Second, BMW NA argues that it is not obligated to disclose the existence of a defect unless it knows with certainty that a product will fail (Def. Moving Br. at 13; Def. Reply Br. at 3).  Third, BMW NA contends that Plaintiff alleges no facts in her Complaint showing that BMW NA intended to defraud Plaintiff.  (Def. Reply Br. at 2).  Finally, BMW NA argues that Plaintiff should not be able to dispose of her obligation to provide detailed factual allegations as required under Rule 9(b).  (*Id.* at 4).

The Court finds that the analysis tips in favor of Defendant.  Despite the allegations set forth above, Plaintiff does not specifically allege: (1) who at BMW NA possessed knowledge of the defect; (2) when or how the decision was made to conceal the defect from customers; (3) that all, or even substantially all, MINI Cooper vehicles have a defective power steering system; and (4) that BMW NA knew that the power steering was certain to fail.   To that end, Plaintiff's claim relating to alleged omissions falls short of meeting the heightened pleading requirements

---

[10] The Court extrapolates these statements from Plaintiff's Complaint as Plaintiff's Brief fails to acknowledge the existence of these factual allegations.  (*See* Pl. Opp. Br. at 7-8).

imposed by Rule 9(b).  *See Glauberzon*, 2011 U.S. Dist. LEXIS 38138, at *28 (holding that

plaintiffs' complaint did not meet the requirements of 9(b) because "Plaintiffs do not identify

who at Pella was aware of the existence of . . . the defect, when or how they learned of the

defect, and when or how the decision was made to conceal the defect from its customers—all of

which are required under the Rule 9(b) pleading standard . . . .  Most importantly, Plaintiffs do

not allege, with sufficient factual support: (1) that all, or even substantially all, Pella factory

made window and door combinations include the defective mullions, (2) that Pella knew that the

mullions were certain to fail, and (3) that Pella limited the warranty agreement's duration in an

effort to avoid the cost of repairs."); *Alban v. BMW of N. Am.*, No. 09-5938, 2011 U.S. Dist.

LEXIS 26754, at *15 (D.N.J. Mar. 15, 2011) (holding that to sufficiently allege a consumer

fraud claim, a plaintiff must set forth "information as to when, before the time he purchased his

vehicle, BMW learned of the defect, how it gained such knowledge, who at the company

possessed such knowledge, and when or how the decision was made to conceal the defect from

customers.  The court also directed [that a plaintiff must] show that all, or even substantially all,

E46 vehicles manufactured by BMW included defective insulation, (2) that the company knew

that the insulation was certain to fail, and (3) limited the warranty agreement's duration in an

effort to avoid the cost of the repairs.").  Similarly here, the Complaint—as currently drafted—at

best alleges that BMW NA knew that the power steering pump maintained in MINI Cooper

vehicles—model years 2002-2009—*might* be defective and that such a defect might not manifest

itself until after the expiration of the warranty period.[11]  Therefore, the Plaintiff here, like the

Plaintiffs in *Glauberzon* and *Alban*, has failed to meet the pleading requirements of Rule 9(b).

---

[11] As a practical matter, this Court, like the *Alban* court, is hesitant to utilize BMW NA's letter to the NHTSA as a potential admission of fraudulent concealment, as Plaintiff requests, because such a practice may discourage manufacturers to respond to customers and/or agencies investigating potential defects.  *See Alban*, 2011 U.S. Dist. LEXIS 26754, at *36-37 ("Finally, as a practical matter, the Court is hesitant to view technical service bulletins, or

In addition, Plaintiff's allegation that BMW NA is under a "continuous duty to disclose to Plaintiff . . . the existence of a Defect" is misplaced.  (Compl. ¶ 40).  The Court reaches this conclusion based upon its interpretation of several cases, each of which will be addressed below. In *Perkins v. DaimlerChrysler Corp.*, the court held that "the failure of a manufacturer or seller to advise a purchaser that a part of a vehicle may breakdown or require repair after the expiration of the warranty period cannot constitute a violation of the [NJ]CFA."  383 N.J. Super. 99, 112 (App. Div. 2006).  Although the court abstained from making a determination in connection with circumstances in which safety concerns might be implicated, the court's rationale in reaching its conclusion is instructive.[12]  The court stated:

> To interpret the [NJ]CFA, beyond its present scope, to cover claims that the component part of a product, which has lasted through the warranty period, may eventually fail, would be tantamount to rewriting that part of the contract which defined the length and the scope of the warranty period . . . , [which] would also have a tendency to extend those warranty programs for the entire life of the vehicle.

*Id.* at 113.

The holding and reasoning announced in *Perkins* was followed in *Alban*.  No. 09-5398, 2010 U.S. Dist. LEXIS 94038 (D.N.J. Sept. 8, 2010).  Although the court in *Alban* did not address circumstances involving safety concerns, the court held "[i]t is not sufficient to allege that the defendant manufacturer knew that a part might fail before the warranty expired but concealed that knowledge . . . .  Put simply, the NJCFA does not require manufacturers to disclose things they do not know.  *Thus, unless a defendant manufacturer knows with certainty*

similar advisories, as potential admissions of fraudulent concealment of a defect.  Such advisories are generally the result of consumer complaints that cause a manufacturer to investigate, diagnose, and remedy a defect in one of its products.  Accepting these advisories as a basis for consumer fraud claims may discourage manufacturers from responding to their customers in the first place.").

[12] Plaintiff's reliance on *Perkins* for the proposition that BMW NA has a duty to disclose a defect which causes safety concerns is misplaced because, as explained above, the court in *Perkins* abstained from making that specific determination.

*that a product will fail, it does not violate the NJCFA by failing to inform its consumers of the possibility of failure.*"  *Id.* at *32-33 (emphasis added); *see also Tatum*, 2011 U.S. Dist. LEXIS 32362, at *9-11 ("[I]f the sales warranty covered the [vehicle's] brakes up to 12,000 miles, and the brakes routinely failed at 12,001 miles, [or if the brakes outlasted the sales warranty by a day], Chrysler or its successor would have had no obligation to repair them.  *Moreover, there would have been no undisclosed defect that Chrysler or its successor had an obligation to alert customers to*.") (emphasis added).

Finally, in *Noble v. Porsche Cars of N. Am.*, the court addressed circumstances involving safety concerns relating to motor vehicles.  694 F. Supp. 2d 333 (D.N.J. 2010).  In *Noble*, plaintiff purchased a used 1999 Porsche in 2005, and used the vehicle without incident until 2006 when he noticed large quantities of smoke being emitted from the tail pipe.  *Id.* at 334.  A Porsche specialist determined that antifreeze had leaked into the vehicle's engine oil through a defective cylinder, irreparably damaging the engine.  *Ibid.*  Plaintiff reported the defect to defendant; however, the defendant refused to cover the cost of replacing the engine and related out of pocket expenses because the vehicle was outside of its four year/50,000 mile warranty.  *Ibid.*  Plaintiff brought suit alleging violations of *inter alia* the NJCFA.  The court held that "a plaintiff cannot maintain an action under New Jersey's CFA when the only allegation is that the defendant provided a part—alleged to be substandard—that outperforms the warranty provided."  *Id.* at 337 (internal quotation omitted).  The court explicitly stated that it agreed with the rationale of *Perkins* and found its holding to be applicable to cases where safety concerns are alleged.  *Id.* at 338.

In light of the holdings of *Perkins*, *Alban*, and *Noble*, BMW NA did not have a duty to disclose the alleged defective power steering system.  The purported defect here manifested after

the warranty had expired.[13]  To that end, BMW NA's failure to advise Plaintiff that a part of a vehicle may break down or require repair after the expiration of the warranty period does not constitute a violation of the [NJ]CFA.  *Perkins*, 383 N.J. Super. at 112.  Moreover, BMW NA did not know *with certainty* that its product would fail; therefore, it did not violate the NJCFA by failing to inform its consumers of the possibility of failure.[14]  *Alban*, 2010 U.S. Dist. LEXIS 94038, at *32-33.  Finally, Plaintiff cannot maintain an action under NJCFA when her allegation is premised upon an alleged substandard or defective part that outperforms the warranty provided.  *Noble*, 694 F. Supp. 2d at 337.

For these reasons, Plaintiff's Complaint does not allege facts establishing the first element of a claim for a violation of the NJCFA—unlawful conduct.  Although the Court need not go further, the Court will continue its analysis for purposes of completeness.

### b. Ascertainable Loss[15]

To state a *prima facie* case under the NJCFA, Plaintiff must also establish an ascertainable loss.  *See Thiedmann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 246 (2005) ("As a prerequisite to the right to bring a private action, a plaintiff must be able to demonstrate that he or she suffered an ascertainable loss . . . .") (internal citation and quotation omitted).  "There is little that illuminates the precise meaning of what the legislature intended [with] respect [to] the

---

[13] Plaintiff did not append a copy of the MINI New Passenger Car Limited Warranty to its Complaint.  The Warranty was, however, attached as an exhibit to BMW NA's moving brief.  (*See* Declaration of Martin Rapaport in Support of Motion to Dismiss ("Rapaport Decl."), Ex. B).  Nevertheless, this Court's consideration of the Warranty does not convert this motion into a motion for summary judgment because it is a document that is explicitly relied upon in Count Three of Plaintiff's Complaint.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[14] To be clear, the alleged defect appears to have manifested in 32 model year 2002 and 2003 MINI Cooper vehicles.  (Compl. ¶ 20).  Moreover, the NHTSA investigation involving model year 2004 and 2005 MINI Cooper vehicles is in response to 54 complaints relating to an alleged defect.  (*Id.* ¶ 21).  However, there were 50,425 model year 2002 and 2003 MINI Cooper vehicles in service.  (Rapaport Decl., Ex. A at 1).  Therefore, Plaintiff has not alleged that BMW NA knew with certainty that its product would fail.

[15] Notably, and much to the surprise of this Court, neither BMW NA nor Plaintiff addressed this element of the analysis.

term ascertainable loss." *Id.* at 248 (internal citation omitted). "To give effect to the legislative language describing the requisite loss for private standing under the [NJ]CFA, . . . a private plaintiff must produce evidence that a fact finder could find or infer that the plaintiff suffered an actual loss." *Ibid.*

That said, "[d]efects can, and do, arise with complex instrumentalities such as automobiles." *Id.* at 251. Thus, "the mere fact that an automobile defect arises does not establish, in and of itself, an actual and ascertainable loss." *Ibid.* Indeed, the warranty provided as part of the contract of sale or lease is part of the benefit of the bargain between the parties. *Ibid.* "The *defects that arise and are addressed by the warranty, at no cost to the consumer, do not provide the predicate loss that the [NJ]CFA expressly requires*." *Ibid.* (emphasis added).

Further, where a vehicle component has outperformed the warranty period, the plaintiff cannot meet the pleading requirements for an ascertainable loss. *See, e.g.*, *Noble*, 694 F. Supp. 2d at 337 ("In accordance with New Jersey law, this Court holds that a plaintiff cannot maintain an action under New Jersey's CFA when the only allegation is that the defendant provided a part—alleged to be substandard—that outperforms the warranty provided."); *Nobile v. Ford Motor Co.*, No. 10-1890, 2011 U.S. Dist. LEXIS 26766, at *15-16 (D.N.J. Mar. 14, 2011) (noting "where a vehicle component has outperformed the warranty period, the plaintiff cannot meet the pleading requirements for an ascertainable loss."); *Duffy v. Samsung Elecs. Am., Inc.*, No. 06-5259, 2007 U.S. Dist. LEXIS 14792, at *22, 23 (D.N.J. Mar. 2, 2007) ("[B]ecause Plaintiff's microwave continued to perform beyond the period in which Samsung was contractually bound to repair or replace any defective part, Plaintiff cannot maintain a CFA claim. To recognize Plaintiff's claim would essentially extend the warranty period beyond that to which the parties agreed."); *Perkins*, 383 N.J. Super at 112 (holding "a claim that a defect

may, but has not, manifested itself until after the expiration of the warranty period cannot form the basis for a claim under the CFA"). Furthermore, it is of no moment that Plaintiff alleges safety concerns here because *Noble*, *Duffy*, and *Nobile* found *Perkins* applicable and concluded that there was no ascertainable loss, where the plaintiffs allegedly concealed defects and where safety concerns were alleged. *See Noble*, 2010 U.S. Dist. LEXIS 14454, at *13-16; *Duffy*, 2007 U.S. Dist. LEXIS 14792, at *21-23; *Nobile*, 2011 U.S. Dist. LEXIS 26766, at *3, 15-17.

Here, Plaintiff's allegations do not meet the pleading requirements for an ascertainable loss for the following reasons. First, the alleged defect—the power steering pump—was covered by BMW NA's warranty. Therefore, the alleged defect does not provide the predicate loss as required for a claim under the NJCFA. *See Thiedmann*, 183 N.J. at 251. Second, the alleged defect did not manifest itself until at least one year after the warranty had expired. To that end, the alleged defect outperformed the warranty period. Therefore, Plaintiff has failed to allege sufficient facts to establish an ascertainable loss. Accordingly, Plaintiff has not established the second element of a cause of action under the NJCFA—ascertainable loss.

### c. Causal Relationship Between Defendant's Misconduct and Plaintiff's Loss

Although the Court finds that Plaintiff cannot sustain a claim under the NJCFA for failing to allege unlawful conduct and an ascertainable loss, for completeness, the Court shall consider the final element of the analysis—the "causal nexus" between the alleged misconduct and loss.

"In order to properly plead this element, plaintiffs must allege facts establishing a causal nexus with the particularity required by Rule 9(b)." *Arcand*, 673 F. Supp. 2d at 303. "It is critical that a plaintiff allege when misstatements were made and at what point a plaintiff was exposed to one or more of those statements." *Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2011 U.S. Dist. LEXIS 65495, at *8, 9 (D.N.J. June 20, 2011).

BMW NA argues that Plaintiff has failed to allege a causal nexus between the Defendant's misconduct and Plaintiff's loss.  Specifically, BMW NA argues that Plaintiff "broadly and vaguely" asserts that she reasonably relied upon and believed the claims in Defendant's MINI Cooper advertising; however, "[Plaintiff] fails to identify *what* she saw or read prior to the purchase of her MINI vehicle."  (Def. Moving Br. at 10) (emphasis in original).

In contrast, Plaintiff contends that causation should be presumed.  (Pl. Opp. Br. at 9).  Alternatively, Plaintiff argues that, irrespective of whether causation should be presumed, she nevertheless has adequately pled causation.  Plaintiff specifically relies upon the following allegations:

> (1) BMW NA's advertising campaign and affirmative statements BMW NA [sic] related to the MINI's safety and steering capabilities (Complaint at ¶¶4-5, 10); (2) that Plaintiff relied upon Defendant's advertisements (*id.* at ¶9); (3) the MINI Coopers contain a common power steering defect and BMW NA did not disclose that defect to consumers; [sic] (*id.* at ¶19-23); (4) Plaintiff's vehicle manifested the defect resulting in loss [sic] control and the vehicle catching fire (*id.* at ¶35); [and] (5) the loss of control and fire are a result of the defect and caused Plaintiff to spend $1000 to fix the vehicle (*id.* at ¶36-37).

(Pl. Opp. Br. at 9).  Finally, Plaintiff argues that BMW NA does have a duty to disclose a defect which causes safety concerns.  (*Id.* at 10).[16]

Defendant has the better of the argument, and the Court agrees that Plaintiff has failed to allege a causal nexus between BMW NA's unlawful conduct and Plaintiff's ascertainable loss with the specificity required by Rule 9(b).  The Court finds *Dewey* instructive.  In *Dewey*, the court examined whether the plaintiffs had sufficiently alleged a causal nexus between the defendants' alleged unlawful behavior and the plaintiff's ascertainable loss.  Despite identifying

---

[16] Plaintiff's reliance on *Perkins* for the proposition that BMW NA has a duty to disclose a defect which causes safety concerns is misplaced because, as explained above, the court in *Perkins* abstained from making that specific determination.

alleged misrepresentations and omissions on defendants' website and in the owner's manual, the court held that plaintiff failed to establish the requisite causal link between the misconduct and loss. Specifically, the court held the following:

> With regard to the statements on Volkswagen's website and in the 2002 Passat owner's manual, the Dewey Plaintiffs do not allege when the statements were made or at what point—if ever—each Plaintiff was exposed to one or more of the statements. Without this information, Plaintiffs have not properly plead [sic] a "causal nexus" with the particularity required by Rule 9(b). Further, these facts are uniquely within Plaintiff's control and discovery will not enable Plaintiffs to allege reliance on these statements with any additional specificity.

*Dewey*, 558 F. Supp. 2d at 527.

Similarly here, Plaintiff has not properly pled a causal nexus with the particularity required by Rule 9(b). In spite of Rule 9(b)'s stricture, Plaintiff pleads a "causal nexus" between the alleged unlawful conduct and ascertainable loss in only general and vague terms. Plaintiff alleges that "[she] purchased her used model year 2005 MINI Cooper in or about September 2009. In doing so, Plaintiff reasonably relied upon and believed the claims in Defendants' [sic] MINI Cooper advertising." (Compl. ¶ 9). Plaintiff further alleges that "Defendants have marketed and advertised the MINI Cooper in . . . various media . . . . (*Id.* ¶ 4). "For instance, in 2004, ads appearing in major national publications for the MINI Cooper stated 'Rated 4 stars in recent crash tests [and] MINI is ready to serve and protect. Statements on its website [include] . . . A powerful ally in the war against loss-of-control.'" (*Id.* ¶ 5).

However, Plaintiff here, like the plaintiffs in *Dewey*, fails to meet the requirements of Rule 9(b). Specifically, with regard to the statements on BMW NA's website and the 2004 advertisements contained in an unspecified national publication, Plaintiff does not allege with specificity when the statements were made, or articulate at what point—if ever—she was

exposed to the advertisements or the statement on BMW NA's website.  *See Hughes*, 2011 U.S. Dist. LEXIS 79504, at *37 ("[P]laintiffs should be able to allege the *specific advertisements*, marketing materials, warranties or product guides that they each reviewed, which included this misrepresentation *and when it was so advertised*.") (emphasis added).

Second, Plaintiff's assertion that a claim under the NJCFA may stand without proof of causation, *i.e.*, that causation can be presumed, is by and large incorrect.  *See McKenna v. Bank of Am.*, No. 10-1848, 2010 U.S. Dist. LEXIS 74874, at *11 (D.N.J. July 26, 2010) ("In order to state a claim for relief under the NJCFA, a plaintiff must show . . . that his loss was caused by the defendant's unlawful conduct."); *Cannon v. Cherry Hill Toyota, Inc.*, 161 F. Supp. 2d 362, 374 (D.N.J. 2001) ("The New Jersey Supreme Court has stated that in order to recover damages under the NJCFA, a plaintiff must 'prove that the unlawful consumer fraud caused his loss.'") (quoting *Cox*, 138 N.J. at 23); *Mehinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 473 (1988) ("a private plaintiff must show that he or she suffered an ascertainable loss . . . as a result of the unlawful conduct") (internal citation and quotation omitted); *Fink v. Ricoh Corp.*, 365 N.J. Super. 520, 563 (Law Div. 2003) (a plaintiff must demonstrate "proof of an ascertainable loss proximately caused by such alleged false representations and concealments").[17]   Moreover,

---

[17] The cases Plaintiff relies upon are unavailing.  First, *Varacallo* involved a class of consumers who purchased vanishing life insurance policies from an agent of the defendant.  While *Varacallo* applied a presumption of causation, the application of that presumption was predicated upon the specific fact that each consumer had to sit through the same presentation during which they were presented with written illustrations that allegedly omitted material information.  *Varacallo v. Mass. Mutual Life Ins. Co.*, 332 N.J. Super. 31, 41 (App. Div. 2000).

Next, *In re Mercedes Benz Tele-Aid Litigation* is also factually distinct.  27 F.R.D. 46 (D.N.J. 2009).  In that case, the defendant knew—with certainty—that its analog-only Tele-Aid cellular systems would become obsolete.  *Id.* at 51.  The court also specified that Plaintiffs do not allege that, but for the alleged misrepresentations, they would not have purchased their vehicles . . . .  Plaintiffs simply claim that they did not get what they paid for.  *Id.* at 74.

Finally, Plaintiff's reliance on *Indian Brand Farms, Inc. v. Novartis Crop Protection Inc.* is misplaced.  617 F.3d 207 (3d Cir. 2010).  The focus of the portion of the Third Circuit's Opinion cited by Plaintiff is "indirect reliance" and its ability to "clearly satisfy the causal requirement of the NJCFA."  *Id.* at 219.  The Third Circuit does not elaborate on the circumstances under which it would be appropriate for a causal relationship to be shown without evidence.

Plaintiff has failed to persuade the Court that a presumption of causation is appropriate under the circumstances presented here.

For the reasons outlined above, Plaintiff has failed to plead a causal nexus between her injuries and BMW NA's unlawful conduct with the particularity required by Rule 9(b).  Having found that Plaintiff has not established a *prima facie* case for a violation of the NJCFA, the Court will grant Defendant's motion to dismiss.  Plaintiff is granted leave to file an Amended Complaint within thirty days from the entry of this Opinion.[18]

### 2. Count Three: Breach of Implied Warranty of Merchantability

In Count Three, Plaintiff sues for breach of the implied warranty of merchantability, N.J.S.A. § 12A:2-314.  Specifically, Plaintiff contends that her MINI Cooper "contained a defect that made driving dangerous and ultimately impossible once the defect became manifest." (Compl. ¶ 69).

"A warranty of merchantability is implied in every contract for the sale of goods." *Arlandson v. Hartz Mt. Corp.*, No. 10-1050, 2011 U.S. Dist. LEXIS 56462, at *31 (D.N.J. May 26, 2011).  "[I]n order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." *Laney v. Am. Std. Cos.*, No. 07-3991, 2010 U.S. Dist. LEXIS 100129, at *32 (D.N.J. Sept. 23, 2010) (internal citation omitted).  "Merchantability does not mean that 'the goods are exactly as the buyer expected, but rather that the goods satisfy a minimum level of quality.'" *Sheris v.*

---

[18] In addition to curing the deficiencies noted *supra*, the Court advises Plaintiff that in drafting its Amended Complaint, Plaintiff should allege sufficient facts stating whether the allegedly fraudulent statement was on BMW NA's website at the time she was deciding to purchase her MINI Cooper, and whether she viewed that statement. Likewise, Plaintiff should plead sufficient facts specifically identifying the national publication that contained the advertisement, the date of the publication, and at what point she viewed the advertisement.  *See Dewey*, 558 F. Supp. 2d at 526 n.19.  This information is uniquely within Plaintiff's control, such that discovery will not enable Plaintiff to allege reliance with any additional specificity.

*Nissan N.A., Inc.*, No. 07-2516, 2008 U.S. Dist. LEXIS 43664, at *16 (D.N.J. June 3, 2008) (citing *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, Nos. 96-3125, 96-1814, 96-3198, 1997 U.S. Dist. LEXIS 24064, at *76 (D.N.J. Sept. 30, 1997)). "For an automobile, the implied warranty of merchantability is breached *only* when a defect renders the vehicle unfit for its ordinary purpose of providing transportation for its owner." *Ibid.* (emphasis added).

That said, the law in the Third Circuit is clear: "defects discovered after the term of the warranty are not actionable." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (internal citation omitted); *Hughes*, 2011 U.S. Dist. LEXIS 79504, at *68 (dismissing claim for implied warranty of merchantability because the "claims d[id] not survive in light of the one-year warranty period"); *Nobile*, 2011 U.S. Dist. LEXIS 26766, at *11 (dismissing implied warranty of merchantability claim with prejudice because the alleged defect "malfunctioned after the expiration of the warranty period, therefore Plaintiffs have failed to state a claim upon which relief could be granted"); *Alban*, 2010 U.S. Dist. LEXIS 94038, at *29, 30 (claim of implied warranty of merchantability was dismissed because the defect manifested itself after the warranty agreement expired); *In re Philips/Magnavox Television Litig.*, No. 09-3072, 2010 U.S. Dist. LEXIS 91343, at *15 (D.N.J. Sept. 1, 2010) (Plaintiffs' implied warranty of merchantability claim failed because the defects were discovered after the terms of the warranty expired); *see also N.J. Transit Corp. v. Harsco*, 497 F.3d 323, 324 (3d Cir. 2007) (holding plaintiff could not "rely on the implied warrant[y] of merchantability . . . to recover damages, where the contract's one-year express warranty had expired at the time of the loss"); *McCalley v. Samsung Elecs. Am. Inc.*, No. 07-241, 2008 U.S. Dist. LEXIS 28076, at *20 (D.N.J. Mar. 31, 2008) ("Plaintiff's breach of implied warranty fails because the duration of the implied warranty period is consistent with the express warranty period . . . ."); *but see Henderson v.*

*Volvo Cars of N. Am., LLC*, No. 09-4146, 2010 U.S. Dist. LEXIS 73624 (D.N.J. July 21, 2010).

The rationale supporting this legal principle was best expressed in *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238 (2d Cir. 1986).  In *Abraham*, the Second Circuit stated:

> [V]irtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a latent defect that existed at the time of sale or during the term of the warranty.  All parts will wear out sooner or later and thus have a limited effective life. . . .

*Id.* at 250.  The Third Circuit incorporated *Abraham's* ruling and logic into its holding in *Duquesne*.[19]

In light of the above, Defendant raises two arguments seeking dismissal of Count Three of Plaintiff's Complaint.  First, BMW NA contends that "the purported defect for which Plaintiff seeks recourse did not occur until, at best, [one] year after the warranty on her vehicle had expired."  (Def. Moving Br. at 16).  Second, Defendant asserts that Ms. Glass "has failed to allege that [her] vehicle is not merchantable."  (Def. Reply Br. at 10).  Conversely, Plaintiff alleges that her MINI Cooper contained a defect that made driving dangerous and ultimately impossible, and was therefore unfit for the purpose it was intended.  (Compl. ¶ 69; Pl. Opp. Br. at 11).[20]

For the reasons set forth below, the Court finds that Plaintiff has not sufficiently alleged a claim for breach of the implied warranty of merchantability.  First, the alleged defect was

---

[19] This Court agrees with the Second Circuit's logic, and finds that the Third Circuit incorporated *Abraham's* ruling and logic into its opinion in *Duquesne*.  This Court is not alone in reaching this conclusion.  Indeed, several other District Courts in New Jersey have adopted a similar approach.  *See, e.g.*, *Dewey*, 558 F. Supp. 2d at 519-20 ("Because the above-quoted passage was central to *Abraham's* holding, this Court must assume that the Third Circuit was aware of its implications when it . . . relied on that case in *Duquesne*."); *Alban*, 2010 U.S. Dist. LEXIS 94038, at *25 ("This Court agrees with the Second Circuit's logic, and finds that the Court of Appeals incorporated that ruling in *Duquesne*.").

[20] The Court is not persuaded by Plaintiff's reliance on *Henderson*, 2010 U.S. Dist. LEXIS 73624, at *28-32.  In addition, Plaintiff raises no allegations of unconscionability with respect to the implied warranty of merchantability.  *See, e.g.*, *Phillips/Magnavox Television Litig.*, 2010 U.S. Dist. LEXIS 91343, at *15, *16; *Alban*, 2010 U.S. Dist. LEXIS 94038, at *30.

discovered after the term of the warranty, and is therefore not actionable.  Plaintiff's warranty agreement explicitly limited the duration of the implied warranty of merchantability to forty-eight months or 50,000 miles, whichever occurred first.  (Rapaport Decl., Ex. B at 2).  The warranty period began on either the date of the first retail sale or the date the vehicle was placed in service, whichever date happened first.  (*Id.* at 1).  Ms. Glass's MINI Cooper would have first been placed in service in 2005.[21]  Thus, when the alleged defect became evident on August 9, 2010, it did so after the warranty had expired.

Finally, Plaintiff has failed to allege facts demonstrating that her MINI Cooper is not merchantable.  The Court finds *Sheris* to be instructive.  In *Sheris*, the plaintiff's vehicle had been driven for two years and during that time accumulated 20,618 miles.  For those reasons, the court held that "'[t]he weight of authority from across the county, indicates that plaintiffs may not recover for breach of the implied warranty of merchantability under the facts' where plaintiffs have driven their cars without problems for years."  2008 U.S. Dist. LEXIS 43664, at *16 (quoting *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 1997 U.S. Dist. LEXIS 24064, at *77.

In this case, Ms. Glass's vehicle has been driven without problems for five years. Specifically, Plaintiff purchased a used 2005 MINI Cooper in 2009, and based upon the allegations contained in the instant Complaint, a problem did not arise until August 9, 2010, when the alleged defect revealed itself.  Comparatively speaking, the five-year period presented here (*i.e.*, the period extending from the date the vehicle was first placed in service to the date

---

[21] The Court notes that Plaintiff's complaint and brief in opposition to Defendant's motion to dismiss are devoid of any fact explaining that Plaintiff's MINI Cooper was neither sold nor placed in service in 2005.  Arguably, Plaintiff's MINI Cooper may have been either sold or put in service in early 2005.  Nevertheless, the Court gives Plaintiff the benefit of the doubt and calculates the forty-eight month period from December 2005.  If Plaintiff files an amended complaint, she is directed to cure this deficiency, and provide the Court with information explaining when the vehicle was first sold and when the vehicle was first placed in service.

when the alleged defect materialized) is substantially greater than the two-year period that was

before the Court in *Sheris*.  The Court further notes that Ms. Glass still drives her MINI Cooper

today.  (Compl. ¶ 38).  Thus, although Plaintiff's MINI Cooper may not have fulfilled Plaintiff's

expectations, Plaintiff does not allege, and this Court cannot find, that Plaintiff's MINI Cooper

fails to provide a minimum level of quality, which is all the law requires.  *See Hughes*, 2011 U.S.

Dist. LEXIS 79504, at *65 ("[T]he Amended Complaint does not contain any explicit allegation

that plaintiffs can no longer use their Televisions . . . .  Although the Televisions may not have

fulfilled plaintiffs' expectations, plaintiffs do not allege that the televisions fail to provide a

minimum level of quality, which is all the law requires."); *see also Sheris*, 2008 U.S. Dist.

LEXIS 43664, at *16.

  For these reasons, Plaintiff has failed to state a claim upon which relief may be granted.

Accordingly, Plaintiff's claim for breach of the implied warranty of merchantability is dismissed.

    **4.**  **Count Four: Unjust Enrichment**[22]

  Plaintiff's fourth cause of action seeks to disgorge BMW NA of alleged profits it

wrongfully obtained under a theory of unjust enrichment.  BMW NA argues that this count must

be dismissed because Plaintiff cannot allege any direct relationship between herself and BMW

NA which would support an unjust enrichment claim.  (Def. Moving Br. at 18).  This Court

agrees.

  For an unjust enrichment claim, "New Jersey law requires a plaintiff to 'show both that

defendant received a benefit and that retention of that benefit without payment would be

unjust.'"  *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558, 2011 U.S. Dist.

LEXIS 16504, at *29-30 (D.N.J. Feb. 16, 2011) (citing *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J.

---

[22] At the outset, the Court notes that "New Jersey law does not recognize unjust enrichment as an independent tort cause of action."  *Nelson*, 2009 U.S. Dist. LEXIS 109580, at *18; *Wiatt*, 2011 U.S. Dist. LEXIS 68827, at *42 (same).

88, 110 (2007) (quotation omitted)).  "It is the plaintiff's . . . conferral of a benefit on defendant which forms the basis of an unjust enrichment claim." *Laney*, 2010 U.S. Dist. LEXIS 100129, at *35 (quoting *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998)).

"A plaintiff must [also] allege a sufficiently direct relationship with the defendant to support an unjust enrichment claim." *Ibid.*  When a plaintiff fails to allege a direct relationship, that plaintiff has failed to assert a claim for unjust enrichment, and under those circumstances, dismissal is appropriate.  *See, e.g.*, *Hart v. Elec. Arts, Inc.*, F. Supp. 2d 658, 670 (D.N.J. 2010) (dismissing plaintiff's unjust enrichment claim where plaintiff did not confer any benefit upon the defendant); *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505-06 (D.N.J. 2009) (dismissing unjust enrichment claims brought by purchasers of all-in-one printer devices against printer manufacturer, because plaintiffs did not allege that they purchased the printers from the defendant manufacturer, but rather conceded to have purchased the printers from a third-party retailer); *Hughes*, 2011 U.S. Dist. LEXIS 79504, at *79 (dismissing plaintiffs' unjust enrichment claim because plaintiffs purchased televisions from third parties, not the defendant); *Laney*, 2010 U.S. Dist. LEXIS 100129, at *36 (holding that a direct relationship did not exist where the plaintiff purchased his toilet from Home Depot, not the defendant, American Standard Companies); *Nelson v. Xacta 3000 Inc.*, No. 08-5426, 2009 U.S. Dist. LEXIS 109580, at *19, 20 (D.N.J. Nov. 23, 2009) (dismissing unjust enrichment claim because a direct relationship between plaintiff and defendant did not exist); *Cooper v. Samsung Elec. Am., Inc.*, No. 07-3853, 2008 U.S. Dist. LEXIS 75810, at *30 (D.N.J. Sept. 30, 2008) (dismissing unjust enrichment claim because "there was no relationship conferring any direct benefit on Samsung through [plaintiff's] purchase, as the purchase was through a retailer, Ultimate Electronics.").

Here, the Court finds that dismissal is warranted since Plaintiff has failed to show that BMW NA benefitted from Plaintiff's purchase of her used 2005 MINI Cooper. Plaintiff has failed to, and cannot based upon the factual allegations of the instant Complaint, establish a direct relationship with BMW NA because Plaintiff purchased her MINI Cooper from The Car Factory, not BMW NA. Thus, Plaintiff has failed to state a claim upon which relief may be granted. Accordingly, Count Four of Plaintiff's Complaint must be dismissed.[23]

### 5.      Count Five: Common Law Fraud

BMW NA also moves to dismiss Count Five of Plaintiff's Complaint, which sets forth Plaintiff's common law fraud claim. "Common law fraud involves a more onerous standard than a claim for fraud under the [NJ]CFA." *Mason v. Costco Wholsesale Corp.*, No. 09-361, 2009 U.S. Dist. LEXIS 76176, at *18 (D.N.J. Aug. 26, 2009) (citing *Cox*, 138 N.J. at 17). Although, neither Defendant nor Plaintiff adequately brief the elements of common law fraud, it is axiomatic that "the elements of common law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge of falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Virginia Sur. Co. v. Macedo*, No. 08-5586, 2011 U.S. Dist. LEXIS 49077, at *56 (D.N.J. May 6, 2011)

---

[23] BMW NA requests that Count Four be dismissed with prejudice because "[it] does not sell vehicles to the public; rather, it is the North American importer, distributor, marketer, and warrantor of BMW and MINI brand vehicles." (Def. Reply Br. at 1 n.1). However, the Court cannot discern, at this time, whether BMW NA sells Mini Coopers to the public. Specifically, BMW NA's website provides:

> BMW of North America, LLC (BMW NA) was established in 1975 as the United States importer of BMW luxury/performance vehicles. BMW of North America assumed import and distribution responsibilities for BMW motorcycles in 1980. BMW of North America also began to distribute light trucks in 1999. BMW of North America's Corporate Headquarters in located in Woodcliff Lake, New Jersey. Its Eastern Regional Headquarters and Technical Training Center is located in Woodcliff Lake, New Jersey. A Vehicle Preparation Center is in Port Jersey, NJ and a Regional Distribution Center is in Nazareth, PA.

*See* http://www.bmwusa.com/Standard/Content/CompanyInformation/ (last viewed Oct. 25, 2011). Based upon this information, it is not clear whether BMW NA actually sells Mini Coopers to the public. Thus, a dismissal without prejudice is the more appropriate course of action.

(quoting *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005)).   "Misrepresentation and reliance are the hallmarks of any fraud claim . . . ."   *Banco Popular v. Gandi*, 184 N.J. 161, 174 (2005) (internal citation omitted).   "Without reasonable reliance on a material misrepresentation, an action in fraud must fail."   *Fuscellaro v. Combined Ins. Grp., Ltd.*, No. 11-723, 2011 U.S. Dist. LEXIS 111470, at *10 (D.N.J. Sept. 29, 2011) (citing *Triffin v. Automatic Data Processing, Inc.*, 394 N.J. Super. 237, 249 (App. Div. 2007)).

To recapitulate, Rule 9(b) requires that "in all averments in fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."   The purpose of the heightened pleading standards is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged."   *Frederico*, 507 F.3d at 200 (internal citation and quotation omitted); *see also Seville Indus. Mach. Corp.*, 742 F.2d at 791 (The purpose of the rule is to "place the defendant[] on notice of the precise misconduct with which [it is] charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.").   "To satisfy this [heightened] standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."   *Frederico*, 507 F.3d at 200.   "Further, the plaintiff *must allege who made the purported misrepresentations and what specific misrepresentations were made*."   *Frederico v. Home Depot*, No. 05-5579, 2006 U.S. Dist. LEXIS 13640, at *8 (D.N.J. Mar. 9, 2006), *aff'd* 507 F.3d 188 (3d Cir. 2007) (emphasis added); *Wiatt*, 2011 U.S. Dist. LEXIS 68827, at *53 (D.N.J. June 27, 2011) (same) (internal citation omitted).

Plaintiff argues that the following language sufficiently pleads a claim for common law fraud: "Plaintiff's complaint [sic] identifies the MINI Cooper models at issue, the circumstances

- 32 -

and dates of Plaintiff's purchase of the vehicle, Plaintiff's experience with the defect, and detailed information regarding the defect along with BMW NA's knowledge of the defect."  (Pl. Opp. Br. at 6).  In addition, Plaintiff's complaint alleges: "Defendants fraudulently and actively concealed material facts regarding the Defect from Plaintiff (Compl. ¶ 85); Plaintiff would not have purchased her vehicle if she knew . . . that the Vehicle contained a safety defect (*id.* ¶ 86); Plaintiff . . . relied to [her] detriment on the concealed and/or non-disclosed facts, . . . and Plaintiff . . . relied on Defendants' misrepresentations regarding the quality of its vehicles in making a decision to purchase the Vehicles."  (*Id.* ¶ 88).  The Court finds that this language does not meet the particularity contemplated by Rule 9(b).  Namely, Plaintiff's complaint does not specify the alleged material misrepresentation, when the material misrepresentation was made, and how the misrepresentation was made.  *See GKE Enters., LLC v. Ford Motor Credit Co. LLC USA*, No. 09-4656, 2010 U.S. Dist. LEXIS 53714, at *12-13 (D.N.J. May 26, 2010) (dismissing plaintiff's complaint because it did not specify the alleged material misrepresentation, who made the misrepresentation, when the misrepresentation was made, or how the misrepresentation was made).  Thus, Plaintiff's Complaint—as currently drafted—fails to put BMW NA on notice of the precise misconduct with which it is charged.  *Frederico*, 507 F.3d at 200.  Therefore, Plaintiff's Complaint does not meet the heightened pleading requirements of Rule 9(b).[24] Accordingly, Count Five of Plaintiff's Complaint is dismissed without prejudice.

---

[24] With respect to Plaintiff's Common Law fraud claim, the Court notes that it cannot determine from the allegations set forth in the instant Complaint whether BMW NA had a duty to disclose an alleged defect.  Specifically, Plaintiff does not allege that a fiduciary relationship existed between herself and BMW NA, that her transaction was fiduciary in nature, or that she expressly reposed trust and confidence in BMW NA.  *See N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.*, 319 N.J. Super. 435, 446 (App. Div. 1998) ("[A] party has no duty to disclose information to another party in a business transaction unless a fiduciary relationship exists between them, unless the transaction itself is fiduciary in nature, or unless one party expressly reposes a trust and confidence in the other.").  Plaintiff may be able to cure this deficiency in her Amended Complaint.

**IV.     Conclusion**

For the reasons set forth above, the Court grants BMW NA's Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) without prejudice.  Plaintiff is granted leave to file an amended complaint within thirty days from the entry of this Opinion to cure the deficiencies identified by this Opinion.  An appropriate Order shall accompany this Opinion.


_s/Esther Salas_____
**Esther Salas, U.S.D.J.**